# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| STANFORD PAUL BRYANT, | CASE NO. 10cv273-W (JLB) |
|---|---|
| Plaintiff, | **REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: GRANTING DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| TIM OCHOA, Chief Deputy Warden, et al., | |
| Defendants. | [ECF No. 78] |

## I. INTRODUCTION

Plaintiff Stanford Paul Bryant, proceeding *pro se*, is a state prisoner currently incarcerated at California State Prison, Sacramento. Plaintiff filed the operative complaint, the First Amended Complaint ("FAC"), on April 26, 2010, pursuant to 42 U.S.C. §1983 alleging retaliation and denial of due process claims against several named defendants for events occurring in 2007 at the Calipatria State Prison. (ECF No. 7.) With respect to correctional officer Defendant T. Armstrong, Plaintiff asserts only a First Amendment retaliation claim. Presently before this Court is Defendant Armstrong's motion to dismiss Plaintiff's retaliation claim. (ECF No. 78.)

The Court submits this Report and Recommendation to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. §636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California. After a

thorough review of the pleadings and supporting documents, this Court **RECOMMENDS** Defendant Armstrong's Motion to Dismiss be **GRANTED.**

## II.   PROCEDURAL BACKGROUND

On February 1, 2010, Plaintiff, proceeding pro se, filed a civil rights complaint pursuant to 28 U.S.C. § 1983. (ECF No. 1.) In addition, Plaintiff filed a Motion to Proceed *In Forma Pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 2.) The Court granted Plaintiff's Motion to Proceed IFP and *sua sponte* dismissed his original complaint for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. (ECF No. 4.)

Plaintiff was granted leave to file an amended complaint. (*Id*.) On April 26, 2010, after receiving an extension of time, Plaintiff filed the FAC. (ECF No. 7.) On June 10, 2010, the Court, once again, conducted the required *sua sponte* screening and dismissed the FAC for failing to state a claim. (ECF No. 8.) On June 29 and 30, 2010, Plaintiff filed two Motions to Alert or Amend Judgement. (ECF Nos. 10, 12.) These Motions were denied by the Court and Plaintiff was given an additional extension of time to comply with the Court's June 10, 2010 Order. (ECF No. 13.) Plaintiff then filed a document entitled "Plaintiff's Election to Stand Upon the Sufficiency of Amended Complaint Pleadings." (ECF No. 14.) The Court *sua sponte* granted an extension of time to comply with the Court's previous dismissal orders. (ECF. No. 15.) Plaintiff did not amend the FAC, and thus on October 8, 2010, the Court dismissed the action for all the reasons stated in the Court's June 10, 2010 Order. (ECF No. 16.)

On October 29, 2010, Plaintiff filed a Notice of Appeal. (ECF No. 18.) On November 29, 2011, the United States Court of Appeals for the Ninth Circuit issued a memorandum disposition[1] affirming in part, vacating in part, and remanding the case. (ECF No. 23.) With respect to the named defendants, except defendant Drake and defendant Madden, the Ninth Circuit summarily concluded that Plaintiff "appears to

---

[1] The Ninth Circuit noted that its disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

have sufficiently alleged a retaliation claim against the remaining defendants, who allegedly directly or indirectly disciplined Bryant through a false rules violation in retaliation for making verbal complaints, submitting written grievances, and/or filing a civil rights action against them or other prison officials." (ECF No. 23 at 3.) The Ninth Circuit did not provide any written analysis to support this determination.

On February 13, 2012, the District Court issued an Order directing entry of the Ninth Circuit's mandate and directing the U.S. Marshal Service to effect service of the FAC under Fed. R. Civ. P. 4(c)(3) and 28 U.S.C. § 1915(d). (ECF No. 22.) The Order also cautioned Plaintiff that "the sua sponte screening and dismissal procedure" was "cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion" and that a defendant could bring such a motion despite the Ninth Circuit's ruling. (*Id*. at 2 (citing *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).)

On February 14, 2014, Defendant Armstrong filed the instant motion to dismiss, arguing that Plaintiff did not timely serve the FAC, that Plaintiff fails to state a retaliation claim against Defendant Armstrong, and that Defendant Armstrong is protected from suit under the qualified immunity doctrine. (ECF No. 78.) On March 17, 2014, Plaintiff filed his response in opposition to Defendant Armstrong's motion to dismiss. (ECF No. 83.) On April 7, 2014, Defendant Armstrong filed her reply. (ECF No. 88.)

**III.   FACTUAL BACKGROUND**

On July 27, 2007, Plaintiff was incarcerated at Calipatria State Prison. (ECF No. 7 at 4.) Plaintiff alleges that at approximately 12:30 P.M. on July 27, 2007, Plaintiff and his cell partner were escorted to separate holding cells by correctional officer Defendant T. Armstrong and correctional officer Villa[2] on their way to the law library. (*Id.* at 7.) Villa escorted Plaintiff, and Defendant Armstrong escorted Plaintiff's cell partner. (*Id*.) Plaintiff alleges that once he, his cell partner, and the two correctional

---

[2] Correctional officer Villa is also a named defendant in this case. Villa and fourteen other prison employees are named in the complaint.

officers arrived at the holding cell area, Villa pushed Plaintiff into the holding cell. (*Id.* at 8.) At this time, Plaintiff alleges that Villa told Plaintiff to turn around so that he could remove his handcuffs. (*Id.*) Plaintiff alleges that he responded by requesting that Defendant Armstrong remove his handcuffs instead of Villa because Plaintiff did not want to be touched by Villa. (*Id.*)

Plaintiff alleges that at the time of this interaction with Villa at his holding cell, Defendant Armstrong was ten feet away escorting Plaintiff's cell partner into a different holding cell. (*Id.* at 9.) Plaintiff further alleges that approximately three minutes later, and after Villa left Plaintiff's holding cell, Defendant Armstrong approached Plaintiff's holding cell. Upon approach, Defendant Armstrong asked Plaintiff whether he was still handcuffed. (*Id.* at 8.) Plaintiff told Defendant Armstrong that he was still handcuffed and that he no longer wanted to be escorted by Villa. (*Id.*)

According to the FAC, approximately five minutes later another guard from the prison, S. Atkins,[3] approached Plaintiff's cell. At this time, Atkins is alleged to have verbally accused Plaintiff of spitting on Villa. (*Id.*) Plaintiff pleads that this accusation was unfounded as he did not spit on Villa. (*Id.*) Plaintiff does not allege that Defendant Armstrong was present at the time of Atkins' purportedly false accusation. Plaintiff pleads that a prison investigation ensued and that Defendant Armstrong remained silent as to whether Plaintiff spit on Villa. According to the FAC, Defendant Armstrong's silence contributed to the alleged cover-up of the truth. (*Id.* at 14.)

## IV.   STANDARD OF REVIEW

### A.   Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) dismissal may be based on either a "'lack of

---

[3] S. Atkins, a correctional sergeant, is also a named defendant in this case.

a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 677 (citing *Bell Atl.*, 550 U.S. at 555).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*  The "mere possibility of misconduct" falls short of meeting this plausibility standard.  *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).  The court does not look at whether the plaintiff will "ultimately prevail but whether the [plaintiff] is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  With respect to an inmate who proceeds *pro se*, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Butler v. Long*, 752 F.3d 1177, 1180 (9th Cir. 2014) ("Where, as in this case, the petitioner is pro se, the documents he filed must be liberally construed") (citing *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).

## V. DISCUSSION

### A. Service of the FAC

Defendant Armstrong argues dismissal is warranted pursuant to Federal Rule of Civil Procedure 4(m).  (ECF No. 78-1 at 8-12.)  Specifically, Defendant Armstrong argues that pursuant to Rule 4(m), because she was served more than 120 days after this lawsuit was filed and because Plaintiff has not shown good cause for the delay, the Court must dismiss the case.  Plaintiff responds that he effectuated service in the time permitted by the Court.  (ECF No. 83 at 6-7.)

On January 3, 2014. Magistrate Judge William McCurine held a telephonic conference regarding service and granted Plaintiff an additional forty-five day

extension of time to re-attempt service on Defendant Armstrong. (ECF No. 64.) Defendant Armstrong concedes that she was served within the forty-five day extension provided by Judge McCurine, on January 16, 2014. (ECF Nos. 71 and 78-1 at 6.) Judge McCurine granted the extension having the benefit of a telephonic conference as well as a written record, which included a declaration by Plaintiff setting forth facts in support of his argument that good cause existed for the extension. (*See* ECF No. 61 (declaring, *e.g.*, "The fact that Defendant T. Armstrong does not work for . . . Prison anymore has made service . . . difficult").) The Court concludes that Judge McCurine was persuaded that good cause existed for the extension. Thus, this Court recommends Defendant Armstrong's request for dismissal pursuant to Rule 4(m) be denied.

### B.     The Ninth Circuit's Memorandum Disposition

As a threshold matter, Plaintiff argues the Ninth Circuit's memorandum disposition regarding this action precludes Defendant Armstrong from moving to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6). In support, Plaintiff points to the Ninth Circuit's memorandum disposition remanding this case in part because Plaintiff "appears to have sufficiently alleged a retaliation claim against the remaining defendants." (*See* ECF Nos. 23 at 3; 83 at 6.) On reply, Defendant Armstrong presents her argument and case authority for the proposition that a "defendant's right to bring a motion to dismiss is not foreclosed by the issuance of a sua sponte screening providing that the prisoner has stated a claim." (ECF No. 88 at 4.)

The Court concludes that Defendant Armstrong's right to bring the instant motion to dismiss is not foreclosed by the Ninth Circuit's memorandum disposition remanding this action. As an initial matter, District Judge Thomas J. Whelan already decided this issue in his Order Directing Entry of the Mandate. (*See* ECF No. 22 at 2.) The Ninth Circuit remanded the District Court's order screening this action under the Prison Litigation Reform Act ("PLRA"), and as Judge Whelan explained, the PLRA screening process is "cumulative of, and not a substitute for, any subsequent Rule

12(b)(6) motion[s]." (*Id*. (quoting *Teahan*, 481 F. Supp. 2d at 1119).) Moreover, the Court recognizes that there is a judicial preference to have issues concerning the sufficiency of a complaint be raised in an adversarial context. As the United States Supreme Court has explained, the adversarial process of briefing arguments suited for a motion to dismiss "crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of the case." *Neitzke v. Williams*, 409 U.S. 319, 330 (1989). Thus, the Court recommends that the District Court analyze the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and relevant case authority.

### C. Defendant Armstrong's Motion to Dismiss the Retaliation Claim

Defendant Armstrong argues that the FAC should be dismissed as pled against her because Plaintiff failed to allege any of the elements necessary for a retaliation claim. (ECF No. 78-1 at 12-16.) Plaintiff disagrees, arguing that his FAC alleges sufficient facts to state a retaliation claim against Defendant Armstrong. (ECF No. 83 at 7-9.)

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Broheim v Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 586 (9th Cir. 2005). For the reasons stated herein, the Court concludes that Plaintiff fails to sufficiently plead the first element of his retaliation claim against Defendant Armstrong. Accordingly, the Court limits its analysis to this element.

Here, the allegations of the FAC do not sufficiently plead the first element – that Defendant Armstrong took some adverse action against Plaintiff. "In order for a person acting under color of state law to be liable under section 1983 there must be a showing

of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Here, Plaintiff's theory is that Defendant Armstrong indirectly disciplined him by failing to come forward with exculpatory facts regarding the accusation that Plaintiff spit on Villa. Specifically, Plaintiff alleges that Defendant Armstrong "participated in defendant Villa's retaliatory actions by covering-up defendant Villa's illegal acts" and by "concealing the truth that Plaintiff never spit on Defendant Villa." (ECF No. 7 at 14.) However, construing the FAC liberally, these conclusory allegations are not supported by the facts pled.

First, with respect to the disputed spitting incident on July 24, 2007, Plaintiff does not allege that defendant Armstrong actually witnessed the interaction between Plaintiff and Defendant Villa at the point when Defendant Villa claims (and Plaintiff denies) that Plaintiff spat on Defendant Villa. According to Plaintiff, during that time period, Defendant Armstrong was securing a different inmate "in the cell next to plaintiff," which was approximately ten feet away. (ECF No. 7 at 8-9.)[4] Further, as pled, it was not until approximately three minutes after the purported spitting incident (real or falsified) that Defendant Armstrong had an opportunity to observe Plaintiff in his holding cell. (ECF No. 7 at 8.) Indeed, Plaintiff pleads that Defendant Armstrong did not approach his holding cell until after Villa left the vicinity and, even then, Defendant Armstrong had to ask Plaintiff whether or not he was still in handcuffs (an indication she was not a witness to the preceding interaction between Plaintiff and Defendant Villa). (*See Id.*)

Moreover, following Plaintiff's relevant interaction with Villa on July 24, 2007, Plaintiff alleges it was Atkins who then approached Plaintiff's holding cell and first

---

[4] In a later, more conclusory, paragraph of the FAC, Plaintiff characterizes Defendant Armstrong as being "in the immediate area" when the incident resulting in the spitting accusation occurred. (ECF No. 7 at 14.) In a vacuum, this language might contain an implication that Defendant Armstrong witnessed the event, but in context it can only be taken as a short-hand reference to the earlier, more specific allegations that put Defendant Armstrong 10 feet away, at another cell, engaged with another inmate.

1  accused Plaintiff of spitting on Villa. (ECF No.7 at 8.) There are no facts pled to
2  suggest that Defendant Armstrong was present at the time of this accusation. Thus,
3  Defendant Armstrong's failure to speak out at a time when she was not present cannot
4  be argued to be indirect discipline.

5  Plaintiff argues that Defendant Armstrong should have reported that she did not
6  see or hear any spitting or any statement from Villa accusing Plaintiff of spitting on
7  him. However, the facts pled do not give rise to a plausible inference that Defendant
8  Armstrong observed, either visually or audibly, the interaction between Plaintiff and
9  Defendant Villa such that a statement as to what she did ***not*** witness would have had
10 any value.

11 Further, Plaintiff makes only conclusory allegations that Defendant Armstrong
12 "cover[ed] up Defendant Villa's illegal acts" and "conceal[ed] the truth that Plaintiff
13 never spit on Defendant Villa" (ECF No. 7 at 14) and those conclusions are not
14 supported by any specific factual allegations. For example, correctional officer
15 Widmann conducted the investigation into the spitting incident. (ECF No. 7 at 10.)
16 Plaintiff discusses his (Plaintiff's) review of the "I.E. Report" that reflects all of the
17 interviews Widmann allegedly conducted of the prison official and inmate witnesses
18 with relevant information. Plaintiff complains that, in fact, "Widmann never
19 interviewed plaintiff's witness Gainer" or correctional officer Lizarraga. (ECF No. 7
20 at 10-11.) In contrast, Plaintiff makes no allegation that Defendant Armstrong avoided
21 an interview with Widmann or that she was interviewed and testified falsely.[5]
22 //
23

---

24 [5] In his opposition papers, Plaintiff submits a declaration in which he adds a new
25 allegation about Defendant Armstrong – that "questions I presented to Defendant Armstrong was [*sic*] answered evasively." (ECF No. 83 at 12.) As an initial matter,
26 Plaintiff may not avoid dismissal, nor may he supplement his FAC, by way of his opposition papers. *See Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197
27 n.1 (9th Cir. 1988) ("The 'new' allegations contained in the inmates' opposition motion, however, are irrelevant for Rule 12(b)(6) purposes."). Further, this conclusory
28 statement is devoid of factual support, and thus, would not cure the pleading deficiencies with respect to Plaintiff's claim against Defendant Armstrong.

Similarly, Plaintiff reviewed the final report of his disciplinary hearing, authored by a correctional lieutenant, Defendant McNair. (ECF No. 7 at 12-13.) Although Plaintiff complains about allegedly false statements contained in the report regarding who was present at the hearing and regarding his (Plaintiff's) alleged failure to deny the allegation of spitting (*id.*), Plaintiff makes no allegations that the report reflects any false statements or the concealment of facts by defendant Armstrong. In fact, the FAC is devoid of any allegations of specific false statements by Defendant Armstrong or specific ways in which she concealed facts.

The Court cannot supply an essential element of Plaintiff's claim that is not pled in the FAC. Plaintiff fails to plead facts giving rise to a plausible inference that Defendant Armstrong's actions or omissions constituted a direct or indirect adverse action against him for purposes of § 1983 liability. Therefore, the Court recommends Defendant Armstrong's motion to dismiss be granted on the ground that Plaintiff fails to sufficiently plead the adverse action element necessary for his retaliation claim against Defendant Armstrong.

### D.   **Defendant Armstrong's Qualified Immunity Defense**

Defendant Armstrong argues that she is protected by qualified immunity. The qualified immunity doctrine protects state officials from suit in certain cases where, for example, "no constitutional right would have been violated were the allegations established." *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001). Here, as Plaintiff fails to sufficiently plead Defendant Armstrong retaliated against him in violation of his constitutional rights, Defendant Armstrong is protected from suit by the qualified immunity doctrine.

### VI.   **CONCLUSION**

The Court submits this Report and Recommendation to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. §636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California. For the reasons outlined above, IT IS HEREBY RECOMMENDED that the Court issue an

1  Order: (1) approving and adopting this Report and Recommendation; and (2) directing
2  that Defendant Armstrong be terminated as a party in GRANTING her motion to
3  dismiss without prejudice (ECF No. 78).
4      IT IS ORDERED that no later than **October 6, 2014**, any party to this action may
5  file written objections with the Court and serve a copy on all parties. The document
6  should be captioned "Objections to Report and Recommendation."
7      IT IS FURTHER ORDERED that any reply to the objections shall be filed with
8  the Court and served on all parties no later than **October 20, 2014**.  The parties are
9  advised that failure to file objections within the specified time may waive the right to
10  raise those objections on appeal of the Court's order.  *See Turner v. Duncan*, 158 F.3d
11  449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).
12      IT IS SO ORDERED.

14  DATED:  September 12, 2014

                                    JILL L. BURKHARDT
                                    United States Magistrate Judge